

**Entered on Docket**
**February 25, 2009**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed: February 25, 2009**

_____
**LESLIE TCHAIKOVSKY**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                   No. 08-42959 T
                                        Chapter 11
MICHELLE PATRICE SIDRIAN,

    Debtor-in-Possession.
_____/

**TENTATIVE RULING ON ADEQUACY OF DISCLOSURE STATEMENT**

    The above-captioned chapter 11 case was filed on June 10, 2008. On January 19, 2009, the debtor filed a plan and disclosure statement and on January 27, 2009 filed and served a notice of hearing on the disclosure statement for March 2, 2009. On February 17, 2009, the Panzer Revocable Trust Dated June 15, 1992 (the "Panzer"), the holder of a deed of trust on a hotel located in Gualala, California (the "Gualala Hotel") filed an opposition to the disclosure statement. The purpose of this memorandum is to provide the parties in advance of the hearing with the Court's tentative conclusions concerning the adequacy of both the plan and the disclosure statement.

**THE PLAN**

In the Court's view, the plan has only a couple of structural problems as described below. The key features of the debtor's plan are as follows:

**Unclassified Claims.**

Administrative claims will be paid in full on the effective date of the plan unless the holder of the claim agrees otherwise.

Priority tax claims will receive the present value of their claim in deferred cash payments over a period not to exceed six years from the assessment date of each claim beginning 30 days from the date of entry of the confirmation order.

**ERRORS:** There are two errors with respect to the proposed treatment of priority tax claims.

Under 11 U.S.C. § 1129(a)(9)(C), the plan must provide that the holder of a priority tax claim will receive regular payments over a period ending not later than "5 years after the date of the order for relief" in a manner no less favorable than unsecured creditors.

1. The period over which the payments are to be made is incorrect.

2. Payments to the unsecured creditors may be more favorable than to the holder of the priority tax claim, i.e., the lump sum payment within 18 months of confirmation.

**Classified Claims and Interests.**

There are thirty-five classes of claims and interests. Thirty-three of the classes are of secured claims. Unless otherwise specified, all of the classes of secured claims are secured by real

2

property located in Antioch, California. Class 34 consists of the general, unsecured claims. Class 35 represents the debtor's equity interest.

**Real Property To Be Surrendered.**

The plan provides that the debtor will surrender the real property located at 901 Wainfleet, 2400 Poplar, 106 Kathy Ellen, 1830 Cavallo, and 2400 (or 2004) Cavallo.[1] The classes of claims secured by these properties--Classes 1, 3, 6, 8-11, 14, and 16--are designated as unimpaired. Although the holders of these claims will receive no payments, they will retain their liens and be entitled to foreclose.

**Real Property To Be Retained.**

The plan provides that the debtor will retain the real property located at 3401 Oakley, 3341 Oakley, 1900 & 1902 Cavallo, 2000 Cavallo, 106 W. 6th St., 2247 Arata Way, 4160 Royal Links, 3414 DiMaggio, and 39301 Highway 1, Gualala, California (the Gualala Hotel). With one exception, all of the classes of claims secured by these properties are designated as impaired. The exception is Class 2, the claim of Washington Mutual, secured by a first deed of trust on 3401 Oakley. The plan provides that the holder of this claim will receive payment of its $35.60 in pre-petition arrears on the effective date, will retain its lien, and will receive current payments in the future as they mature.

---

[1] One of the addresses appears to be a typo. However, the Court notes that the debtor failed to schedule real property at either address.

3

The holders of the remaining claims will retain their liens and will receive payment of their pre-petition arrears over time without interest beginning 30 days after the entry of the confirmation order as summarized below.

| Property Address | Class | Arrears | Monthly Payment |
|---|---|---|---|
| 3341 Oakley | 13 | $19,094.44 | $318.24 |
| 1900/1902 Cavallo | 17 | 14,306.34 | 238.43 |
| 2000 Cavallo | 4 | 2,076.86 | 34.61 |
| 106 W. 6th St. | 7 | 30,381.86 | 506.30 |
| 2247 Arata Way | 12 | 18,142.88 | 302.38 |
| 4160 Royal Links | 15 | 21,777.51 | 362.95 |
| 3414 DiMaggio | 18 | 14,262.12 | 237.70 |
| 3901 Highway 1 Gualala | 5 | 140,029.80 | 2,333.83 |

**Real Property Tax Claims**

Classes 19 through 33 consist of delinquent real property tax claims on real property the debtor proposes to retain.[2] All of these classes are designated as impaired. The debtor proposes to pay the amounts due over time on a monthly basis as summarized below.

| Property Address | Class | Arrears | Monthly Payment |
|---|---|---|---|
| 208 Worrell Rd., #B | 19 | $5,252.21 | $105.04 |
| 210 Worrell Rd., #B | 20 | 5,005.80 | 100.11 |

---

[2]The Court is skeptical that the debtor is current on her real property tax obligations with respect to the real property she intends to surrender. No such claims are classified. However, since the claims would be unimpaired, not entitled to vote, and not likely to object to the plan, the Court will not inquire further as to their existence and the debtor's failure to classify them.

4

| Address | # | Amount | Amount |
|---|---|---|---|
| 3406 Poplar Dr. | 21 | 1,920.73 | 38.14 |
| 106 W. 6th St. | 22 | 13,079.91 | 261.59 |
| 3309 Jessica Ct. | 23 | 1,000.16 | 20.03 |
| 3321 Jessica Ct. | 24 | 2,978.34 | 59.56 |
| 3325 Jessica Ct. | 25 | 872.02` | 17.44 |
| 3329 Jessica Ct. | 26 | 795.09 | 15.90 |
| 3333 Jessica Ct. | 27 | 737.38 | 14.74 |
| 3345 Oakley Rd. | 28 | 948.92 | 18.97 |
| 3341 Oakley Rd. | 29 | 137.79 | 2.75 |
| 3301 Jessica Ct. | 30 | 923.26 | 18.46 |
| 3305 Jessica Ct. | 31 | 948.92 | 18.97 |
| 3313 Jessica Ct. | 32 | 666.90 | 13.33 |
| 3317 Jessica Ct. | 33 | 615.59 | 12.31 |

**General, Unsecured Claims.**

Class 34 consists of the general, unsecured claims, which the debtor quantifies as $310,278.27. The plan provides that the holders of these claims will receive their pro rata share of $1,000 monthly beginning three months after the entry of the confirmation order. In addition, they will receive a pro rata share of a lump sum payment of $253,278.27 within 18 months after entry of the confirmation order. No interest will accrue on these clams. The debtor believes that this will constitute payment in full of these claims.

**ERROR:** The plan must provide a deadline for objecting to claims and must provide that the pro rata share of distributions to disputed claims will be reserved based on the amount of the claim filed or scheduled, whichever is greater. It should also explain what will be

5

done with the funds reserved for any claim if the dispute is resolved in the debtor's favor.

**Equity Interest.**

The debtor will retain her equity interests in her property.

**Means of Execution.**

The payments will be funded from the sale of real property, future profits from rents, and the debtor's wages. The debtor will manage her assets and serve as the disbursing agent post-confirmation.

The plan provides for the assumption of residential leases with respect to the real property at 4160 S. Royal Links Circle, 2247 Arata Way, 3341 Oakley Rd, 3414 DiMaggio Way, 2000 Cavallo Rd., and 106 W. 6th St., all in Antioch, California, and the commercial lease of the taqueria building at 39301 S. Highway 1, Gualala, California. It provides for the rejection of the residential lease with respect to the real property at 1828 Cavallo Rd., 1830 Cavallo Rd, and 2400 Poplar Drive.

**Discharge.**

The plan provides that the debtor will receive a discharge five years from confirmation to the extent specified by 11 U.S.C. § 1141.

**POSSIBLE ERROR:** This provision is ambiguous. The debtor may only receive a discharge when the plan is fully performed. If the plan is not fully performed in five years, the debtor will not receive a discharge in five years. This provision should be clarified.

6

**THE DISCLOSURE STATEMENT**

The key elements of a disclosure statement are as follows: (1) an explanation of the voting and confirmation procedure, (2) general background, including a description of the events leading to the filing of the chapter 11 case and the significant events during the chapter 11 case, (3) a summary of the debtor's assets, (4) a summary of the debtor's liabilities, (5) a summary of the plan, (6) a discussion of the feasibility of the plan, and (7) a liquidation analysis. The Court will discuss its evaluation of how well the debtor satisfied these elements before considering the objection.

**1. Explanation of Voting and Confirmation Procedure**

This information is provided in Sections I and IV-A. The discussion in Section I is satisfactory. The following misstatements appear in Section IV-A and need to be corrected:

Page 22, line 1. The statement that only creditors who have filed claims may file objections is not true and is inconsistent with statements contained elsewhere that any party in interest may object to confirmation.

Page 22, lines 2-3. The statement that, since the debtor retains her interest, the plan cannot be confirmed if any impaired class votes to reject it is not true. The plan could be confirmed over the objection of an impaired secured claim if the proposed treatment meets the "cramdown" standards. It is true that the plan may not be confirmed over the objection of the Class 34 general, unsecured claims.

7

Page 22, line 13. There is some confusing excess language on this line.

Page 22, lines 18-19. The statement that an allowed claim that is impaired by the plan only has the right to vote if the plan fails to pay it in full is not true. An impaired claim has the right to vote on the plan even if the plan proposes to pay the claim in full.

Page 22, lines 20 and 22. These lines inappropriately refer to administrative claims as classified claims and characterize them as unimpaired. As recognized elsewhere, administrative claims are not classified and are not characterized as either impaired or unimpaired. Moreover, the statement on line 20-23--that all classes except administrative claims are impaired and therefore their members entitled to vote--would be inaccurate anyway. There are several classes of unimpaired claims.

Page 23, line 9. The reference to claims entitled to priority under section 507(a)(7) should probably be to section 507(a)(8).

Page 24, line 15-17. The phrases "discriminate unfairly" and "fair and equitable" should either be eliminated or explained. It would be sufficient to say that the plan may be confirmed even if the holder of one or more secured claims votes against it as long as the Court finds that the proposed treatment meets certain statutory requirements.

Page 24, line 21. The phrase "impaired classes secured" is garbled. In any event, this section is duplicative of the previous one and should be eliminated.

8

**2. General Background**

This information is provided in Section II. This section appears satisfactory although the Court notes that the figure $15,000.00, on page 10, line 2, should probably be $1,500.00.

**3. Summary of Assets**

The disclosure statement does not contain a section describing the debtor's assets and their value. However, other sections of the disclosure statement contain the required information. The Court finds this satisfactory.

**4. Summary of Debts**

The disclosure statement does not contain a section describing the debtor's liabilities. However, other sections of the disclosure statement contain the required information. The Court finds this satisfactory.

**5  Summary of Plan**

This information is provided in Section III. It is not a summary of the plan, merely a repetition of it. However, the Court will not require the section to be revised except to the extent the plan itself is required to be revised.

**6. Feasibility**

As the debtor recognizes, a discussion of feasibility should address two subjects: (1) the debtor's ability to pay the claims required to be paid on the effective date of the plan, and (2) the debtor's ability to pay the claims required to be paid over time. The first subject is addressed in Section 4-C at page 27. The Court finds this discussion satisfactory.

9

The second subject is discussed on page 28. The Court does not find it satisfactory. The debtor states that she has $3,000 a month in net wages over her living expenses with which to pay the $1,000 per month required by the plan to be paid to the Class 34 general, unsecured claims. However, with respect to the required lump sum payment of $253,278.27 within 18 months of confirmation, she states in broad terms that this payment will come from the sale of the hotel, the Antioch lots, and/or the interest in the Sommersville Plaza LLC. This is inadequate. Moreover, nothing is said about her ability to pay the priority tax claims or the monthly payments required to be paid on the various classes of secured claims.

**7. Liquidation Analysis**

The liquidation analysis is not technically adequate. It should show each asset or category of assets separately, value the asset or category on a liquidation basis, and deduct from this figure the costs of sale, secured claims, and exemptions, if any. From the total net value of the assets derived in this fashion, the following figures should then be deducted in the following order: first, the estimated chapter 7 administrative claims, then the chapter 11 administrative claims, then the pre-petition priority claims. The amount remaining should be compared to the amount of general, unsecured claims. However, that being said, the debtor appears to concede that the liquidation value of her estate is well in excess of the amount of the general, unsecured claims. However, solvent estates such as the debtor's must pay post-petition interest even on general, unsecured claims. As a result, as the plan is presently

10

constructed, if a member of Class 34 votes against the plan, it cannot be confirmed.

### PANZER'S OBJECTION TO DISCLOSURE STATEMENT

Panzer objects to the adequacy of the disclosure statement on the ground that it: (1) fails to disclose material facts regarding the condition of the Gualala Hotel, (2) fails to explain how the debtor will fund the plan, (3) fails to disclose the continuing operating losses of the Gualala Hotel, (4) fails to reveal the terms of the deeds of trust on the various properties, including the regular monthly payments and whether the interest rates are fixed or variable, (5) fails to disclose details regarding the sale of the Gualala Hotel, and (6) fails to discuss the ramification of the proposed assumption of the lease with GHBC, LLC.

**1. Material Facts Regarding Condition of Gualala Hotel**

Panzer notes that, during an evidentiary hearing on its motion for relief from the automatic stay, it submitted evidence regarding needed repairs and improvements, some of which affected public safety. Panzer contends that the disclosure statement fails to discuss these issues or explain how she intends to fund them. This objection has merit and will probably be sustained at the hearing.

**2. Fails to Explain how Debtor Will Fund Plan**

Panzer contends that the disclosure statement fails to explain how the debtor will fund the plan, in particular, the ongoing payments to Panzer. Panzer notes that, since the adequate protection order was entered as a result of its motion for relief from stay, the debtor has been late on her payments to Panzer and has "bounced"

11

checks. Panzer notes that the entity to which the debtor has leased the Gualala Hotel is an empty shell with no apparent assets. This objection has merit and will probably be sustained at the hearing.

**3. Failure to Disclose Continuing Operating Losses of Gualala Hotel**

Panzer notes that the debtor's monthly operating reports disclose that the Gualala Hotel has lost over $12,000 a month during November and December 2008. Under the plan, the debtor is required to pay Panzer approximately $11,000 a month, taking into account both the current mortgage payments and the proposed cure of the pre-petition arrears. To explain how this will be done, the debtor simply states that she expects business to improve during the high season. Panzer contends that this statement is inadequate. As discussed above, the Court agrees with Panzer that the disclosure statement does not adequately explain how the payments required will be funded.

**4. Failure to Disclose Payment and Interest Rate Terms of Deeds of Trust**

Panzer notes that the disclosure statement fails to disclose the amounts of the monthly payments on the various secured claims and their interest terms. Without this information, it is impossible to evaluate whether the plan is feasible. This objection has merit and will probably be sustained at the hearing.

**5. Failure to Disclose Details Regarding Sale of Gualala Hotel**

12

Panzer notes that the plan proposes to pay the Class 34 general, unsecured creditors a large lump sum payment[3] within 18 months. According to Panzer, the debtor proposes to generate these funds from the sale of the Gualala Hotel. Panzer notes that the disclosure statement fails to include any discussion of the debtor's marketing efforts, if any, or of the prospect of selling the Gualala Hotel within 18 months. This objection has merit and will probably be sustained at the hearing. Although the plan does not limit the source of funding to the sale of the Gualala Hotel, there is no meaningful discussion of the feasibility of the debtor's generating this sum of money within 18 months.

**6. Failure To Discuss Ramifications of Proposed Assumption of Lease With GHBC, LLC**

Finally, Panzer notes that the debtor proposes to assume the GHBC, LLC lease. It objects that the disclosure statement provides no information concerning the benefits to the estate of assuming this lease nor of GHBC, LLC's ability to perform. This objection has merit and will probably be sustained at the hearing.

END OF DOCUMENT

---

[3] The objection states the amount as $253,298. The amount stated in the plan is $253,278.

13

COURT SERVICE LIST

Mark A. McLaughlin
Law Offices of McLaughlin and Wildman
3012 Lone Tree Way #300
Antioch, CA 94509

Chris D. Kuhner
Kornfield, Nyberg, Benes & Kuhner, P.C.
1999 Harrison St., Ste. 2675
Oakland, CA 94612